LOCAL 1894, American Federation of State, County and Municipal Employees, AFL-CIO, *et al.*, Plaintiffs-Appellants, v. LEE HOLSAPPLE, Sheriff of Macon County, Defendant-Appellee.

Fourth District No. 4—89—0989

Opinion filed August 30, 1990.—Rehearing denied September 24, 1990.

Stephen A. Yokich, of Cornfield & Feldman, of Chicago, for appellants.

Lawrence R. Fichter, State's Attorney, of Decatur, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

This appeal involves a complaint for declaratory judgment and for a judgment enjoining defendant, Lee Holsapple, sheriff of Macon County, from using auxiliary deputies for duties that should be performed by regular deputies. The trial court dismissed the original complaint on the basis that the plaintiff union, Local 1894, American Federation of State, County, and Municipal Employees, AFL-CIO (Local 1894), which was the representative of the regular deputies, had no standing to bring the injunction. Plaintiff was allowed to refile its complaint and added John Kendall, a resident taxpayer and deputy sheriff of Macon County, as co-plaintiff. The trial court dismissed the amended complaint on the basis that it merely stated conclusions of fact and law, but allowed plaintiffs the opportunity to replead. Instead, plaintiffs elected to appeal, disputing the trial court's conclusion that plaintiff's amended complaint failed to state a cause of action.

We reverse and remand.

I

In January 1989, Local 1894, a voluntary association of deputy sheriffs of Macon County, existing for the purpose of safeguarding the working conditions of its members and for maintaining the professional status of deputy sheriffs, filed a complaint against Holsapple, seeking declaratory and injunctive relief to restrain him from employing auxiliary deputies in violation of section 10.2 of "An Act to revise the law in relation to sheriffs" (Act) (Ill. Rev. Stat. 1987, ch. 125, par. 10.2, now see Ill. Rev. Stat. 1989, ch. 34, par. 3—6013). That statute authorizes a county sheriff to employ auxiliary deputies, but prohibits

the·use of such deputies to perform the duties of regular deputy sheriffs (Ill. Rev. Stat. 1987, ch. 125, par. 10.2).

Among other things, the complaint alleged that Holsapple employed such auxiliary deputies to guard and transport prisoners, to perform routine police patrols, and to provide security at county events. The complaint also alleged that 18 such auxiliary deputies were regularly employed, some for 85 hours per month. Further, the complaint stated that the extensive use of auxiliary deputies was contrary to the public policy set forth in section 10.2 of the Act and endangered public safety. Finally, the complaint stated that the sheriff refused to comply with the statute, despite complaints of regular deputies, and that an injunction was needed to enforce the law.

Defendant moved to dismiss the complaint on various grounds. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) Attached to the motion was the working agreement for 1987-1988 between Macon County, the sheriff of Macon County, and Local 1894. This agreement recognized Local 1894 as the sole and exclusive bargaining representative in all matters establishing and pertaining to wages and salaries, hours, working conditions, and other conditions of employment for all deputy sheriffs. The agreement also provided for certain management rights, including, *inter alia*, but not limited to the following: to direct all operations of the department; to establish reasonable work rules and schedules of work; to schedule and assign employees in positions within the department; to maintain efficiency of departmental operations; *to take whatever action is necessary to comply with State and Federal law*; and to determine the methods, means, and personnel by which department operations are to be conducted. Further, the agreement provided for a grievance procedure as follows:

> "Definition of a Grievance: A grievance is defined as any difference, complaint or dispute between the Employer and the Union or any Employee regarding the application, meaning or interpretation of this Agreement. This grievance procedure is subject to and shall not conflict with any provisions of the Illinois Public Labor Relations Act."

The agreement contained no provision for "manning."

After a hearing, the court granted the motion to dismiss the initial complaint, holding that Local 1894 could not assert the interest of its members without exhausting administrative and contractual remedies. Further, the court held that Local 1894 did not have standing to assert the interests of the general public. The court, did, however, grant leave to replead.

In April 1989, Local 1894 filed an amended complaint. Added to

the complaint as plaintiff was Kendall, a resident taxpayer and deputy sheriff of Macon County. Count I of the amended complaint was brought by Kendall and asserted the interests of Macon County residents in the existence of a professional county law-enforcement system and in public safety. Count II of the complaint was brought by Local 1894 and asserted the interests of deputy sheriffs with respect to the terms and conditions of their employment. Defendant again filed a motion to dismiss plaintiffs' complaint. The court granted the motion.

In its opinion dated August 25, 1989, the court noted that plaintiffs had standing to obtain injunctive relief against violations of the law by defendant. However, the amended complaint was dismissed on the basis that it consisted almost entirely of conclusions of fact and law. The court granted plaintiffs 28 days to file a new pleading.

On October 13, 1989, defendant filed a motion for an order of dismissal. The court granted this motion on November 2, 1989. Plaintiffs appeal from these orders.

II

On appeal, plaintiffs argue that their amended complaint should not have been dismissed because it set forth sufficient factual allegations to state a claim for injunctive relief. Specifically, plaintiffs argue that their amended complaint sets out the terms of the statute limiting the use of auxiliary deputies, and then alleges violations of that statute. Further, plaintiffs argue that their amended complaint sets forth the reasons they seek enforcement of the statute and that Holsapple has continued to employ the auxiliary deputies in violation of that statute despite complaints. In response, defendant argues that plaintiffs have shown none of the elements necessary to entitle them to an injunction.

A

■ For the purposes of ruling on a motion to dismiss, all well-pleaded facts contained in a complaint must be taken as true and all inferences therefrom must be drawn in favor of the nonmovant. (*Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1030, 439 N.E.2d 1319, 1320-21.) Further, a complaint will not be dismissed if facts essential to its claim appear by reasonable implication and it reasonably informs the defendants of a valid claim under a general class of cases. *Teter v. Clemens* (1986), 112 Ill. 2d 252, 256-57, 492 N.E.2d 1340, 1342.

B

■ Generally, a party seeking an injunction must allege in its complaint (a) possession of a certain and clearly ascertained right which requires protection; (b) irreparable injury if the injunctive relief is denied; and (c) lack of an adequate remedy at law. See *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 377-78, 444 N.E.2d 205, 209.

With regard to the question of possession of a certain and clearly ascertained right which requires protection, plaintiffs have set forth in their complaint the statute under which they are asserting their rights. Under section 10.2 of the Act, the activities of regular deputies may be supplemented by auxiliary deputies as follows:

"Such auxiliary deputies shall not supplement members of the regular county police department or regular deputies in the performance of their assigned and normal duties, except as provided herein. Such auxiliary deputies may be assigned and directed by the sheriff to perform the following duties in the county:

*To aid or direct traffic within the county, to aid in control of natural or human made disasters, to aid in case of civil disorder as assigned and directed by the sheriff, provided, that in emergency cases which render it impractical for members of the regular county police department or regular deputies to perform their assigned and normal duties, the sheriff is hereby authorized to assign and direct auxiliary deputies to perform such regular and normal duties.* \*\*\* Such auxiliary deputies shall at all times during the performance of their duties be subject to the direction and control of the sheriff of the county. Such auxiliary deputies shall not carry firearms, except with the permission of the sheriff, and only while in uniform and in the performance of their assigned duties.

Auxiliary deputies, prior to entering upon any of their duties, shall receive a course of training in the use of weapons and other police procedures as shall be appropriate in the exercise of the powers conferred upon them under this Act, which training and course of study shall be determined and provided by the sheriff of each county utilizing auxiliary deputies, provided that, before being permitted to carry a firearm an auxiliary deputy must have the same course of training as required of peace officers in Section 2 of 'An Act in relation to firearms training for peace officers.' \*\*\*

Auxiliary deputies may not be paid a salary, except as provided in Section 2 of 'An Act in relation to the regulation of

motor vehicle traffic and the promotion of safety on public highways in counties,' but may be reimbursed for actual expenses incurred in performing their assigned duty. The County Board must approve such actual expenses and arrange for payment." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 125, par. 10.2.

The complaint filed in January 1989 by Local 1894 against Holsapple alleged, in pertinent part, the following: (1) Local 1894 was the voluntary association of deputy sheriffs of Macon County, existing for the purpose of safeguarding the working conditions of its members and for maintaining the professional status of deputy sheriffs; (2) Local 1894 sought declaratory and injunctive relief to restrain Holsapple from employing auxiliary deputies in violation of section 10.2 of the Act; (3) section 10.2 of the Act authorizes a county sheriff to employ auxiliary deputies, but prohibits the use of such deputies to perform the regular duties of regular deputy sheriffs; (4) Holsapple employed such auxiliary deputies to guard and transport prisoners, to perform regular police patrols, and to provide security at county events; (5) 18 such auxiliary deputies were regularly employed, some for 85 hours per month; (6) the extensive use of auxiliary deputies was contrary to the public policy set forth in section 10.2 of the Act and endangered public safety; and (7) Holsapple refused to comply with the statute, despite complaints of regular deputies. The complaint concluded that an injunction was needed to enforce the law.

The amended complaint filed in April 1989, adding Kendall as co-plaintiff, asserted essentially the same facts. However, Kendall brought count I of the amended complaint and asserted the interests of Macon County residents in the existence of a professional county law-enforcement system and in public safety, and Local 1894 brought count II of the amended complaint and asserted the interests of regular deputy sheriffs with respect to the terms and conditions of their employment.

■ We conclude that plaintiffs alleged in their amended complaint the possession of a certain and clearly ascertained right which requires protection.

With regard to the question of irreparable injury, plaintiffs allege in count I of their amended complaint that an injunction is necessary to ensure the existence of a professional county law-enforcement system and to protect public safety. In count II of their complaint, plaintiffs allege that section 10.2 of the Act, in providing limited authority to a sheriff to appoint and employ auxiliary deputies, was not intended to permit the sheriff thereby to supplement the members of or

the duties of regular county deputy forces. Plaintiffs contend that section 10.2 was intended to preserve the terms and conditions of employment for regular deputies. Thus, plaintiffs assert that the continuing actions of Holsapple, despite their complaints, are in contravention of the prescribed limitations of work functions for auxiliary deputies and are intended to and have the effect of providing a nonsalaried, amateur, supplementary county police force, contrary to public policy and the professional interest of the regular deputies.

In *SSA Foods, Inc. v. Giannotti* (1982), 105 Ill. App. 3d 424, 426-27, 434 N.E.2d 460, 463, plaintiff alleged in its complaint that (1) defendants breached their contract by opening a restaurant under the name "Vic Giannotti in Franklin Park"; (2) defendants persisted in their use of that name despite repeated requests by SSA to discontinue its use; (3) defendants were in direct competition with SSA; and (4) defendants' continuous use of the name caused confusion to SSA's customers and injured SSA's reputation and business. The trial court granted the injunction.

On appeal, the defendants contended that the injunction was improperly issued because it was based upon an insufficient complaint. Defendants argued that the complaint was based upon plaintiff's conclusion that it suffered irreparable harm and that no facts were alleged to substantiate this claim. The court found, however, that an allegation of loss of business alone was a sufficiently specific factual allegation of irreparable injury. The court found that for purposes of establishing a right to injunctive relief, irreparable harm did not mean injury that was beyond repair or beyond compensation in damages. Rather, it denoted transgressions of a continuing nature. *SSA Foods*, 105 Ill. App. 3d at 427-28, 434 N.E.2d at 463-64.

Likewise, in *Bond v. Dunmire* (1984), 129 Ill. App. 3d 796, 473 N.E.2d 78, this court held that injunction was proper even though the plaintiff failed to state in his complaint that he had requested defendants to remove a barrier; that defendant had acted in violation of his rights; and that any damage or injury would be sustained by him if injunctive relief was not granted. *Bond*, 129 Ill. App. 3d at 803, 473 N.E.2d at 83-84.

■ Based upon the foregoing cases, we conclude plaintiffs alleged sufficient facts in their amended complaint to indicate irreparable injury.

With regard to the question of the lack of an adequate remedy at law, plaintiffs allege in their complaint that prior to the filing of their lawsuit, Holsapple had full knowledge of plaintiffs' complaints that he was using auxiliary deputies in violation of State law. Plaintiffs claim

that the continued failure of Holsapple to comply with the law demonstrates that the unlawful conduct will continue unless and until the court issues injunctive relief. Plaintiffs then assert that said continuing conduct means that Kendall has no remedy at law. In response, defendant contends that plaintiffs have failed to exhaust their administrative remedies before seeking injunctive relief.

█ It is true that when a matter can be decided by an administrative agency, courts are generally required to defer to the appropriate agency. The purpose of this rule is to enable matters which require specialized or technical expertise to be decided by a tribunal possessing those qualities. (*Semmens v. Board of Education of Pontiac Community Consolidated School District No. 429* (1989), 190 Ill. App. 3d 174, 178, 546 N.E.2d 746, 748.) There are, however, exceptions to this rule.

In *Semmens*, this court concluded that the broad reach of the Illinois Educational Labor Relations Act (Educational Labor Relations Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*) did not cover that case. The school district, realizing the problems arising by the lack of verification in regard to its motion to dismiss, maintained the face of the complaint showed a dispute over which only the Illinois Educational Labor Relations Board had jurisdiction. The complaint, however, merely alleged the existence of an educational employer and educational employees and the failure of the employer to comply with section 24—9 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—9). No mention was made of a collective-bargaining agreement requiring arbitration or providing for a grievance procedure. (*Semmens*, 190 Ill. App. 3d at 179, 546 N.E.2d at 749.) Thus, the court held that the sole remedy given by the Educational Labor Relations Act to employees, where no collective-bargaining agreement was shown to be in force, was to seek a determination under section 15 of the Educational Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1715). (*Semmens*, 190 Ill. App. 3d at 179, 546 N.E.2d at 749.) No indication was given that plaintiffs should have grieved the issue of which they complained or requested the education association to submit it to arbitration because the question of a free lunch period was not covered by the collective-bargaining agreement. *Semmens*, 190 Ill. App. 3d at 181, 546 N.E.2d at 750.

Here, we have a somewhat similar situation. Defendant's latest motion to dismiss set forth the collective-bargaining agreement between the parties, but that agreement does not cover the subject of "manning." Thus, the instant dispute is not subject to arbitration under the provisions of section 8 of the Illinois Public Labor Relations

Act (Public Labor Relations Act), which provides for "arbitration of disputes concerning the administration or interpretation of the agreement." (Ill. Rev. Stat. 1987, ch. 48, par. 1608.) Further, the instant dispute does not involve an unfair labor practice under the provisions of section 10 of the Public Labor Relations Act. (Ill. Rev. Stat. 1987, ch. 48, par. 1610.) Thus, here, as in *Semmens*, the instant dispute concerns alleged violations by the employer of a statute enacted for the benefit of the employees.

■■ The dispute before us does not fall within the scope of the Public Labor Relations Act. Nonetheless, public policy requires the existence of an adequate avenue of resolution when a dispute arises between a union of public employees and management. Because the Illinois Public Labor Relations Board in *County of Kane v. Randall* (1990), 194 Ill. App. 3d 1029, 1034-35, 551 N.E.2d 1117, 1120-21, lacked jurisdiction in a labor dispute involving an employer and an official, the appellate court found that the circuit court was the only body capable of legally resolving that labor dispute. The same holds here.

■■■ Injunctive relief will be granted when a public official's acts are arbitrary and capricious and he abuses his discretion, or if fraud, corruption, or gross injustice are shown to underlie his discretionary actions, a court may provide injunctive relief. (*Arnold v. Engelbrecht* (1987), 164 Ill. App. 3d 704, 707, 518 N.E.2d 237, 239.) Additionally, injunctive relief will be granted against public officials with respect to their official acts if those acts are either outside their authority or unlawful. (*Lindsey v. Board of Education* (1984), 127 Ill. App. 3d 413, 422, 468 N.E.2d 1019, 1026.) An employer's action which is in contravention of a clearly mandated public policy gives rise to a cause of action, which is independent of any contract remedy that the employee may have. (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 149, 473 N.E.2d 1280, 1283.) In such circumstances, a plaintiff need not plead the exhaustion of grievance procedures to sustain a cause of action. *Midgett*, 105 Ill. 2d at 152, 473 N.E.2d at 1285.

■■ Because, in the present case, plaintiffs' amended complaint clearly shows the lack of any other remedies, the exhaustion requirement is fully complied with.

## C

As a last matter, we note that plaintiffs have not addressed before this court that part of the trial court's order that dismisses plaintiffs' cause of action for declaratory judgment. Because we find that plaintiffs' request for declaratory relief is so intertwined with plain-

tiffs' request for injunctive relief, we find it necessary to discuss this issue also.

A complaint for a declaratory judgment must meet the requirements of section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—701). The essentials of a declaratory judgment are (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests, though there need not be any act in violation of such interest. See *Griffin v. County of Cook* (1938), 369 Ill. 380, 398, 16 N.E.2d 906, 915 (Stone, J., specially concurring).

In the present case, we find that plaintiffs have satisfied these three requirements. As we discussed in part II B of this opinion, plaintiffs alleged in their amended complaint the possession of a certain and clearly ascertained right which was provided to them by section 10.2 of the Act. This right is the equivalent of a "legal tangible interest." Plaintiffs also alleged in their amended complaint that defendant employed auxiliary deputies contrary to this interest. Thus, we conclude that the second and third requirements of section 2—701 of the Code of Civil Procedure have likewise been met.

### III

Accordingly, we hold that the trial court erred when it stated that plaintiffs' amended complaint consisted almost entirely of conclusions of fact and law. The order dismissing plaintiffs' amended complaint is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

LUND and GREEN, JJ., concur.